IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **CSIDENTITY CORPORATION** | § | |
| | § | |
| V. | § | 1:18-CV-00870-RP |
| | § | |
| **NEW EQUITY PROD., INC, et al.** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Motion to Dismiss (Dkt. No. 15), Plaintiff's Response (Dkt. No. 16), and Defendants' Reply (Dkt. No. 18); Plaintiff's Amended Motion for Discovery (Dkt. No. 17); and Plaintiff's additional brief (Dkt. No. 27). The District Court referred the above motion to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(c) of Appendix C of the Local Court Rules.

## I. BACKGROUND

Plaintiff CSIdentity Corporation ("CSID") is a corporation that is headquartered and conducts its business activities in Austin, Texas. CSID provides identity theft protection, fraud detection, credit monitoring, identity monitoring, and related services. New Equity is headquartered in California. New Equity ("NEP") assists police officer associations in website design, fundraising efforts, and with social media. New Equity allegedly has a history of doing business in Texas, including previously contracting with Texas law enforcement associations and departments. Defendant Howitt is New Equity's chief executive officer. He has his principal residence in California.

In September 2017 CSID and NEP entered into a Technology Services Agreement ("Agreement"). CSID alleges that it prepared, negotiated, and made revisions to the Agreement during negotiations in Austin, Texas. CSID, under the agreement, basically created a fully hosted website for NEP's customers to access. Under the Agreement, NEP is required to pay CSID over one million dollars. The Agreement is set to conclude on September 8, 2022. CSID claims that Howitt and other NEP representatives requested the right to assign the Agreement to another one of Howitt's companies, Spider Cyber Security, LLC ("Spider Cyber"). In November 2017, CSID, NEP, and Spider Cyber entered into the Consent to Assignment Agreement ("Assignment/Guaranty Agreement"), in which NEP assigned its rights and obligations under the parties' original Agreement to Spider Cyber. Spider Cyber agreed to be bound by the Agreement and to perform all NEP obligations and liabilities under the Agreement. Howitt, who is the CEO of NEP and the manager-member of Spider Cyber, signed the Assignment/Guaranty Agreement on behalf of NEP and Spider Cyber Security.

The Assignment/Guaranty Agreement contains a guaranty clause where NEP expressly guarantees Spider Cyber's performance and payment obligations under the Agreement. CSID claims that roughly four months after the parties entered into the Assignment/Guaranty Agreement, Spider Cyber relayed to CSID that it was insolvent and that Spider Cyber would be terminating the Agreement. CSID states that it emphasized to NEP it guaranteed Spider Cyber's payments under the Agreement, but NEP has allegedly refused to comply and has made none of the payments that are due. As a result, CSID filed this lawsuit, in which it brings several claims, including a breach of contract claim against NEP, breach of fiduciary duties claim against Howitt, a fraud claim against all defendants, and a civil conspiracy claim and alter ego claim against all defendants.

Defendants move to dismiss for lack of personal jurisdiction and improper venue. The Court ordered additional briefing on the narrow question of the applicability of the forum selection clause in the Agreement. Dkt. No. 26. CSID timely filed the ordered briefing, Dkt. No. 27, while Defendants failed to file any additional brief.

## II. LEGAL STANDARD

A non-resident defendant may move to dismiss for lack of personal jurisdiction under Rule 12(b)(2). "If, as here, the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "The district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a *prima facie* case for jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion. . . ." *Id.* (internal quotations and citations omitted). "Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a *prima facie* case for [personal] jurisdiction has been presented." *Id.* The plaintiff must prove that the court has jurisdiction over the defendant with regard to each claim. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006).

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if (1) the state's long-arm statute permits an exercise of jurisdiction over that defendant, and (2) an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *Sangha,* 882 F.3d at 101; *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), *cert. denied,* 131 S.Ct. 68 (2010). Because the requirements of Texas's long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether this

Court's exercise of personal jurisdiction over the Defendants would be consistent with due process. *Id.* The Supreme Court has articulated a two-part test to determine whether a federal court sitting in diversity may properly exercise personal jurisdiction over a nonresident defendant: (1) the nonresident must have sufficient "minimum contacts" with the forum state, and (2) subjecting the nonresident to jurisdiction in the forum state must not offend traditional notions of "fair play and substantial justice." *McFadin*, 587 F.3d at 759 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). A defendant's "minimum contacts" may give rise to either specific or general personal jurisdiction, depending on the nature of the suit and defendant's relationship to the forum state. *Jackson v. Tanfoglio Giuseppe, S.R.L.,* 615 F.3d 579, 584 (5th Cir. 2010).

In this Circuit, specific personal jurisdiction is a claim-specific inquiry; a plaintiff bringing multiple claims that arise out of different forum contacts must establish specific jurisdiction for each claim. *McFadin,* 587 F.3d at 759. Specific jurisdiction applies when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008). The touchstone of specific-jurisdiction analysis is "whether the defendant's contact shows that it reasonably anticipates being haled into court." *McFadin*, 587 F.3d at 759. Even a single contact can support specific jurisdiction if it creates a "substantial connection" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985). Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Sangha*, 882 F.3d at 103 (quoting *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432-33 (5th Cir. 2014). Due process requires that specific jurisdiction be based on more than the "random, fortuitous, or attenuated" contacts a defendant makes by interacting with people affiliated with the forum state.

*Walden v. Fiore*, 571 U.S. 277, 286 (2014). The plaintiff thus "cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id*. at 285.

### III. ANALYSIS

A.      **Motion to Dismiss (Dkt. No. 15)**

Defendants argue that CSID has failed to show that its causes of action arise out of conduct occurring in Texas and that no specific personal jurisdiction exists over the defendants. CSID, on the other hand, argues that there are number of contacts that demonstrate that this Court has specific personal jurisdiction over the Defendants. The Court agrees.

First, this Court has specific personal jurisdiction over CSID's tort claims against the defendants, including CSID's claim against Howitt for breach of fiduciary duty and both Howitt and NEP for fraud. "When a nonresident defendant commits a tort within the state . . . that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within the state . . . to exercise personal adjudicative jurisdiction." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007) (quoting *Guidry v. United States Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999)). In addition, "[w]hen the content of a defendant's communications with Texas gives rise to a claim for breach of fiduciary duty, the defendant is subject to personal jurisdiction in Texas because he has purposefully availed himself of the privilege of causing a consequence in the forum state." *Difusion, Inc. v. Difusion Venture Group, LLC*, 2014 WL 12580438 at *2 (W.D. Tex. June 24, 2014)*; Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). Here, because CSID's claims arise out of the Defendants' actions directed at Texas, CSID has made a *prima facie* case that this Court has personal jurisdiction over both NEP and

5

Howitt. Howitt's alleged actions encompass engaging in communications with CSID representatives in Austin, including expressing reluctance about entering into the Agreement and requesting the use of one of his other companies for purposes of entering into the Agreement, initiating the request to assign the Agreement to another one of his companies, signing the Assignment agreement that was drafted in substantial part by CSID in Austin, and engaging in email communications with CSID in February 2018 related to payments owed by NEP to CSID (Dkt. No. 16, Exhibit 3). These actions and communications are clearly enough to show that Howitt purposefully availed himself of the privilege of causing a consequence in Texas as it relates to both the breach of fiduciary duty and fraud claims. Similarly, CSID has alleged enough facts to show that NEP representatives engaged in email and telephone communications with CSID in Texas to fraudulently induce CSID to enter into the Assignment/Guaranty agreement. *Id*. The Fifth Circuit recently stated,

> [W]e hold that [the nonresident defendant], a willing participant on a conference call who actively engaged in conversation regarding his business, is more akin to an initiator of a phone call as contrasted to the recipient of an uninitiated, unsolicited phone call . . . and should have reasonably anticipated being haled into Texas court as a result of reaching out to Texas via phone in order . . . to make specific representations.

*Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 491 (5th Cir. 2018). Here, as in *Trois,* NEP has engaged in contacts that were not "fortuitous" and has the requisite minimum contacts with Texas in regard to CSID's fraud claim. Like Howitt (who is the CEO of NEP), NEP representatives were not passive participants, but instead were key negotiating parties. They initiated the communications with CSID, who they knew to be in Austin. It is the intentional conduct on the behalf of the Defendants through these communications that have led to the current suit.

Second, CSID has pled enough facts to demonstrate that this Court can exercise personal jurisdiction over CSID's breach of contract, civil conspiracy, and alter ego claims. Defendants contend in part that CSID has argued that there are a number of contacts between the Defendants and Texas, but none that relate to CSID's claim that the Defendants' failed to perform under the contracts at issue. Dkt. No. 18 at 5. In regard to the breach of contract claim, Defendants argue that the mere act of contracting with a resident of a forum state is insufficient to confer specific personal jurisdiction. *Id.* at 4. Defendants also argue that the relevant inquiry as it relates to personal jurisdiction is not the extent of CSID's conduct within Texas, but rather the nature of their ir conduct in, or directed at, Texas. While it appears from the parties' pleadings and briefs that the "hub" of the parties' activities was certainly Texas—with little evidence to counter that it was elsewhere—at the end of the day the Court need not reach Defendants' arguments on this point. As discussed above, the Court has specific personal jurisdiction over CSID related to the tort claims. Because the Court possesses personal jurisdiction over the Defendants for CSID's intentional tort claims, it can exercise pendent personal jurisdiction over other claims that arise out of the same nucleus of operative facts, even though it may lack an independent basis for personal jurisdiction over those claims. *BidPrime, LLC v. SmartProcure, Inc.*, 2018 WL 5260050, at *4 (W.D. Tex. Oct. 22, 2018); *Rolls-Royce Corp. v. Heros Inc.*, 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008). Given that CSID's civil conspiracy, alter ego, and breach of contract claims all arise out of the same nuclear of operative facts as CSID's intentional tort claims against the Defendants, the Court can exercise personal jurisdiction in the rest of the claims in CSID's Amended Complaint.

Given that CSID has established minimum contacts between the Defendants and Texas, the burden of proof shifts to the Defendants to show that the assertion of jurisdiction is unfair and

unreasonable. *Sangha*, 882 F.3d at 102. In evaluating whether the exercise of jurisdiction is fair and reasonable, the court balances: "(1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plantiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies." *Id*. The case must be"compelling;" as "[i]t is rare to say the assertion is unfair after minimum contacts have been shown." *Wien Air Alaska,* 195 F.3d at 215.

The Defendants have not met their burden to demonstrate that the exercise of jurisdiction is unfair and unreasonable. NEP argues that it would be unreasonable to require a small business and its principal to litigate in Texas given the "dearth of evidence, information or witnesses" located in Texas. Dkt. No. 15 at 8-9. As CSID points out, NEP and Howitt are not unfamiliar with the Texas business environment. While NEP may be a small business, it has clearly conducted business with Texas law enforcement associations and departments in the past and by its own website appears to have been registered to conduct business in Texas at least within the past several years. This is not the sort of association with a state that would make it unfair and unreasonable to require that party to answer a suit in the state. Dkt. No. 15, Exhibit 6. NEP also argues it would pose an inconvenience to force it—a small business from California—to litigate in Texas, but this applies equally to CSID, as it too would be inconvenienced to litigate in California. *Wien Air Alaska*, 195 F.3d at 216. Based on Defendants' arguments, the Court finds no burden to the Defendants that would outweigh the legitimate interests of the plaintiff and the forum state. *Id*.

Separately, Defendants argue that CSID's claims are subject to a mandatory forum selection clause, and, as a result, dismissal under 12(b)(3) is warranted. Defendants argue that CSID's claims

arise from a contractual relationship specifying Orange County, California as a mandatory venue for any lawsuit. Dkt. No. 18 at 7. In reviewing the parties' briefs and arguments related to the forum selection clause, the Court on May 29, 2019, ordered additional briefing related to the clause. Dkt. No. 26. The Court outlined that it intended to address the forum selection clause issue first. given that if the clause mandated transfer, the personal jurisdiction issue would be moot. The Court asked for further briefing on several issues, and ordered Defendants to file their brief by June 13, 2019, and for CSID to file its response by June 20, 2019. Defendants, however, failed to file the additional brief. Despite this, CSID filed its brief by the deadline. Dkt. No. 27. CSID'sbrief persuasively demonstrates that the forum selection clause argument lacks merit. Further, by failing to file the additional briefing that was ordered, the Defendants have waived the forum selection clause argument. *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp.2d 738, 748 & n.10 (S.D. Tex. 2003) ("[F]ailure to brief an argument in the district court waives that argument in that court.") (citing *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002)).

B.     **Motion for Discovery on Jurisdiction (Dkt. No. 17)**

Finally, CSID sought limited expedited discovery on personal jurisdiction, venue, and leave to file a supplemental response to defendants' Motion to Dismiss. The decision to allow jurisdictional discovery is within the district court's discretion. *Fielding v. Hilbert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). "[D]iscovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum Dev. B. V.*, 213 F.3d 841, 855 (5th Cir. 2000) (quoting *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 2000). As discussed above, the Court has specific personal jurisdiction over the

Defendants' on intentional tort claims and pendant personal jurisdiction on the remaining claims. There is, therefore, no need for CSID to conduct discovery on jurisdiction.

## IV.  RECOMMENDATION

The undersigned **RECOMMENDS** that Defendants' Motion to Dismiss (Dkt. No. 15) be **DENIED** and Plaintiff's Motion for Discovery (Dkt. No. 17) be **DENIED AS MOOT**.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C) (2006); *Thomas v. Arn*, 474 U.S. 140, 150–153 (1985); *Lisson v. O'Hare*, 326 F. App'x 259, 260 (5th Cir. 2009).

SIGNED this 15th day of August, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE