**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **CSIDENTITY CORPORATION** | § | |
| | § | |
| **V.** | § | **1:18-CV-00870-RP** |
| | § | |
| **NEW EQUITY PROD., INC, et al.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Section 1404 Motion to Transfer Venue (Dkt. No. 37), and

Plaintiff's Response (Dkt. No. 41). The District Court referred the above motion to the undersigned

Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(c) of

Appendix C of the Local Court Rules.

## I.  BACKGROUND

Plaintiff CSIdentity Corporation ("CSID") is a corporation that is headquartered and conducts

its business activities in Austin, Texas. CSID provides identity theft protection, fraud detection,

credit monitoring, identity monitoring, and related services. New Equity Productions, Inc. ("NEP")

is headquartered in California. NEP assists police officer associations in website design, fundraising

efforts, and with social media. NEP allegedly has a history of doing business in Texas, including

previously contracting with Texas law enforcement associations and departments. Defendant

Andrew J. Howitt is NEP's chief executive officer. He has his principal residence in California.

In September of 2017 CSID and NEP entered into a Technology Services Agreement

("Agreement"). CSID, under the Agreement, basically created a fully hosted website for NEP's

customers to access. Under the Agreement, NEP is required to pay CSID over one million dollars.

The Agreement is set to conclude on September 8, 2022.  CSID claims that Howitt and other NEP representatives requested the right to assign the Agreement to another one of Howitt's companies, Spider Cyber Security, LLC ("Spider Cyber").  In November 2017, CSID, NEP, and Spider Cyber entered into the Consent to Assignment Agreement ("Assignment/Guaranty Agreement"), in which NEP assigned its rights and obligations under the parties' original Agreement to Spider Cyber. Spider Cyber agreed to be bound by the Agreement and to perform all NEP obligations and liabilities under the Agreement.  Howitt, who is the CEO of NEP and the manager-member of Spider Cyber, signed the Assignment/Guaranty Agreement on behalf of NEP and Spider Cyber Security.

The Assignment/Guaranty Agreement contains a guaranty clause where NEP expressly guarantees Spider Cyber's performance and payment obligations under the Agreement.  CSID claims that roughly four months after the parties entered into the Assignment/Guaranty Agreement, Spider Cyber relayed to CSID that it was insolvent and that Spider Cyber would be terminating the Agreement.  CSID states that it emphasized to NEP it guaranteed Spider Cyber's payments under the Agreement, but NEP has allegedly refused to comply and has made none of the payments that are due.  As a result, CSID filed this lawsuit bringing a variety of claims, including a breach of contract claim against NEP, breach of fiduciary duties claim against Howitt, and a fraud claim, a civil conspiracy claim and an alter ego claim against all defendants.

On November 23, 2018, Defendants filed a motion to dismiss on the grounds of lack of personal jurisdiction and improper venue.  Dkt. No. 15.  The Court ordered additional briefing on venue, specifically on the narrow issue of the applicability of the forum selection clause in the original Technology Services Agreement. Dkt. No. 26.  CSID timely filed the ordered briefing, (Dkt. No. 27), while Defendants failed to file any additional briefs.  On August 15, 2019, the Court issued

a Report and Recommendation recommending the District Court deny the Defendants' Motion to Dismiss for Lack of Jurisdiction and Improper Venue (Dkt. No. 28), which was adopted by District Court on September 26, 2019 (Dkt. No. 29).  Despite this, Defendants now ask the Court to transfer venue of the case under 28 U.S.C. § 1404.

## II. LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  It is well settled that the party seeking the transfer of venue bears the burden of demonstrating that the case should be transferred.  *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) ("plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed").  The decision whether to transfer a case under § 1404(a) is a matter within the district court's sound discretion.  *In re Volkswagen of America, Inc. II*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc), *cert. denied*, 129 S.Ct. 1336 (2009); *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988).  The preliminary question under § 1404 is whether the lawsuit "might have been brought" in the destination venue.  *In re Volkswagen AG I*, 371 F.3d 201, 202 (5th Cir. 2004).  The Court must determine whether the moving party has shown "good cause" for transferring the case.  *In re Volkswagen II*, 545 F.3d at 315 (citing *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963)).  This, in turn, requires the party moving for transfer to "clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, and in the interest of justice.' " *Id.* (quoting 28 U.S.C. § 1404(a)).

In determining whether a transfer is for the convenience of parties and witnesses and in the interest of justice, courts look to a series of private and public factors. *In re Volkswagen II*, 545 F.3d at 315. The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws in the application of foreign law." *Id.* The Fifth Circuit has clarified that these factors are not exhaustive or exclusive and that none are dispositive. *Id.*

## III. ANALYSIS

Defendants argue that CSID's claims are subject to a mandatory forum selection clause, and, as a result, transfer of venue under Section 1404 is warranted. Specifically, Defendants argue that CSID's claims arise from a contractual relationship which specifies that Orange County, California is the mandatory venue for any lawsuit arising from the contractual relationship. Dkt. No. 37 at 4-6. As mentioned, the Court has already considered the issue of the forum selection clause in this case. On May 29, 2019, this Court ordered additional briefing related to the applicability of the clause. Dkt. No. 26. Defendants failed to file the additional brief, while CSID filed its brief by the ordered deadline. *See* Dkt. No. 27. On August 15, 2019, this Court found that "CSID's brief persuasively demonstrated that the Defendants' forum selection clause argument lacks merit." Dkt. No. 28 at 9. The Court further found that, "by failing to file the additional briefing that was ordered, the Defendants have waived the forum selection clause argument." *Id.* (citing *Magee v. Life Ins. Co. of*

*N. Am.*, 261 F. Supp.2d 738, 748 & n.10 (S.D. Tex. 2003) ("[F]ailure to brief an argument in the district court waives that argument in that court.")).  The District Court adopted the Report and Recommendations on September 26, 2019.  Dkt. No. 29.

Even if the Court had not previously found waiver, Defendants' forum selection clause arguments still fail because the clause does not apply to CSID's claims in this case.  To determine whether a forum selection clause applies to a given case, a court undertakes two separate inquires: (1) whether the contract is valid and the forum selection clause is enforceable, and (2) whether the present case falls within the scope of the forum-selection clause. *Clarity Research & Consulting, LLC v. OmniWest, LLC*, No., 2017 WL 1535235, at *7 (W.D. Tex. Apr. 26, 2017).  Here, CISD does not challenge the validity of the original Agreement or the enforceability of the forum selection clause, but rather argues that none of its claims against the Defendants fall within the scope of the clause.  *See* Dkt. No. 41 at 8-11.  The Court agrees.

Under Texas law,[1] courts evaluate whether a claim falls under a forum selection clause by employing a "but-for test," and considering whether the claim could exist independent from the contract.  *See Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 437-38 (Tex. 2017).  In this case, each of CSID's claims against Defendants NEP and Hewitt can be maintained independently from the Agreement because CSID's claims concern the Assignment/Guaranty Agreement, not the original Technology Services Agreement containing the forum selection clause.  *See* Dkt. No. 41 at 8-11.  Because CSID's claims arise out of the Assignment/Guaranty Agreement, and can exist independently from the original Agreement, the forum selection clause is inapplicable to CSID's

---

[1] Although federal law applies to the enforceability of forum selection clauses in diversity cases, the law of the forum state applies to interpretations of the meaning and scope of the forum selection clause.  *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 301 (5th Cir. 2016).

claims. *Gullion v. JLG ServicePlus*, 2007 WL 294174, at *5-7 (S.D. Tex. Jan. 29, 2007) (refusing to transfer venue because plaintiff's claims arose out of a breach of a partnership agreement and related torts, and existed independently from a separate employment agreement that contained a forum selection clause).

Thus, even if they had not waived the issue, and even if they were not precluded from raising the issue under the law of the case doctrine, Defendant's claim that venue must be transferred in this case fails on its merits. The forum selection clause argument is not persuasive because all of CSID's claims emanate from or relate to the Guaranty/Assignment Agreement, and thus are not governed by the forum selection clause contained in the original Technology Services Agreement.

## IV. RECOMMENDATION

The undersigned **RECOMMENDS** that Defendants' Section 1404 Motion to Transfer Venue (Dkt. No. 37) be **DENIED**. The Clerk is directed to remove this case from the undersigned's docket and return it to the docket of the Honorable Robert Pitman.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to

proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C.

§ 636(b)(1)(C) (2006);  *Thomas v. Arn*, 474 U.S. 140, 150-153 (1985);  *Lisson v. O'Hare*, 326 F.

App'x 259, 260 (5th Cir. 2009).

SIGNED this 15th day of January, 2021.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

7